1  *[Counsel Listed on Signature Block]*

2  **IN THE UNITED STATES DISTRICT COURT**

3  **NORTHERN DISTRICT OF CALIFORNIA**

4  **SAN JOSE DIVISION**

| | |
|---|---|
| ADAPTIX, INC.,<br>          Plaintiff,<br><br>v.<br><br>APPLE INC., AT&T MOBILITY LLC,<br>AND JOHN DOE NOS. 1-10,<br>          Defendants. | Case No. 5:15-cv-00364-PSG<br><br>**ADAPTIX'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**<br><br>Hearing Date: April 30, 2015 at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, INC.,<br>          Plaintiff,<br><br>v.<br><br>APPLE INC., CELLCO PARTNERSHIP D/B/A/ VERIZON WIRELESS, AND JOHN DOE NOS. 1-10,<br>          Defendants. | Case No. 5:15-cv-00365-PSG<br><br>**ADAPTIX'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**<br><br>Hearing Date: April 30, 2015 at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, INC.,<br>          Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC, HTC CORPORATION, AND JOHN DOE NOS. 1-10,<br>          Defendants. | Case No. 5:15-cv-00366-PSG<br><br>**ADAPTIX'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**<br><br>Hearing Date: April 30, 2015 at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, INC.,<br>          Plaintiff,<br><br>v.<br><br>HTC CORPORATION, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS AND JOHN DOE NOS. 1-10,<br>          Defendants. | Case No. 5:15-cv-00367-PSG<br><br>**ADAPTIX'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**<br><br>Hearing Date: April 30, 2015 at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |

1

## **TABLE OF CONTENTS**

I.   ISSUES ........................................................................................................... 1

II.  INTRODUCTION ........................................................................................... 1

III. LEGAL STANDARDS ................................................................................... 4

   A.   Legal Standard Under Rule 12(b)(6) .................................................... 4

   B.   Claim Preclusion and Issue Preclusion vs. Res Judicata and Collateral Estoppel .................... 5

IV.  ARGUMENT .................................................................................................. 5

   A.   CLAIM PRECLUSION ........................................................................ 5

      1.   Adaptix's Rights After Final Judgment in the 2012 Suits ................... 6

      2.   Claim Preclusion Cannot Bar Adaptix's Claims Accruing During Pendency of the 2012 Suits ................... 9

   B.   THE *KESSLER* DOCTRINE ............................................................ 10

   C.   ISSUE PRECLUSION .......................................................................... 14

V.   CONCLUSION ............................................................................................... 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

CASES

3  *Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 988 F.2d 1157 (Fed. Cir. 1993) ........................... 4

4  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)...................................................... 5

5  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ............... 6, 7, 8, 9, 10

6  *Blair v. City of Greenville*, 649 F.2d 365 (5th Cir. 1981) ...................................... 10

7  *Brain Life v. Elekta*, 746 F.3d 1045 (Fed. Cir. 2014).................................... 6, 8, 13, 16

8  *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069 (Fed. Cir. 2009)............................ 5

9  *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed.Cir. 1991) ...................................... 8

10  *Gillig v. Nike, Inc.*, 602 F.3d 1354 (Fed. Cir. 2010)....................................... 10, 11

11  *Hallco Mfg. Co. v. Foster*, 256  F.3d 1290 (Fed. Cir. 2001) ................................... 8

12  *In re Bill of Lading Trans. and Processing System Patent Litigation*, 681 F.3d 1323 (Fed. Cir. 2012). 5

13  *In Re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001)................................... 10

14  *Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368 (Fed. Cir. 2006) .......................... 5

15  *Kessler v. Eldred*, 206 U.S. 285 (1907)...................................................... 12

16  *Kilgoar v. Colbert County Bd. Of Educ.*, 578 F.2d 1033 (5th Cir. 1978) ......................... 10

17  *Manning v. City of Auburn*, 935 F.2d 1355 (11th Cir. 1996) ................................... 10

18  *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995)..................... 5

19  *MGA Entm't, Inc. v. Mattel, Inc.*, 2011 WL 5007955 (C.D. Cal. 2011)......................... 7, 12

20  *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987)............................. 14

21  *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75 (1984) ........................... 5

22  *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)............................................... 4

23  *Nystrom v.Trex Co.,* 580 F.3d 1281 (Fed. Cir. 2009)........................................... 8

24  *Rubber Tire Wheel Co. v. Goodyear Co*., 232 U.S. 413 (1914) ................................. 13

25  *Shoom, Inc. v. Elec. Imaging Sys. of Amer., Inc.*, Case No. 07-05612, 2011 WL 4595212 (N.D. Cal.

26  Oct. 4, 2011) ............................................................................. 14

27  *SpeedTrack, Inc. v. Office Depo, Inc.*, 2014 WL 1813292 (N.D. Cal. 2014)....................... 15

28  *Superior Industries, LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287 (Fed. Cir. 2012)................ 6

1

**STATUTES**

2

Fed.R.Civ.P. 8(c) ................................................................................................................. 10

3

**OTHER AUTHORITIES**

4

Restatement (Second) of Judgments § 24(2) (1982) ........................................................ 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff, ADAPTIX, Inc. ("Adaptix"), opposes the Motion of Defendants, Apple Inc. ("Apple"), AT&T Mobility LLC ("AT&T"), HTC America, Inc. and HTC Corporation (together, "HTC") and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, "Defendants"), to Dismiss.

## I. ISSUES

1. Does claim preclusion bar Adaptix's claims?

2. Does the *Kessler* doctrine bar Adaptix's claims?

3. Does issue preclusion prohibit Adaptix from arguing direct infringement by Verizon?

## II. INTRODUCTION

### The 2012-13 Adaptix Suits

Adaptix filed five suits in 2012 and 2013 (the "2012 suits"), against AT&T and HTC (*filed* 1/13/2012 as 6:12-cv-019; *later* 5:13-cv-01778); HTC and Verizon (*filed* 3/9/2012 as 6:12-cv-121; *later* 5:13-cv-01844); Apple and Verizon (*filed* 3/9/2012 as 6:12-cv-124; *later* 5:13-cv-01776); Apple and AT&T (*filed* 3/9/2012 as 6:12-cv-125; *later* 5:13-cv-01777); and Apple and AT&T (*filed* 1/4/2013 as 6:13-cv-28; *later* 5:13-cv-02023).  Adaptix alleged infringement of U.S. Patent Nos. 7,454,212 ("the '212 patent") and 6,947,748 ("the '748 patent") (together, "the Asserted Patents").

On February 2, 2015, this Court entered final judgment in the 2012 suits.  *See, e.g.*, Case No. 5:13-cv-01776, Dkt. No. 419.  Defendants argue that judgment creates preclusion in these cases.  This Opposition will sort out and respond to those arguments.

### The 2015 Adaptix Suits

Adaptix filed four suits on January 26, 2015 (the "2015 suits").  *See* Case Nos. 5:15-cv-00364-PSG, Dkt. No. 1; 5:15-cv-00365-PSG, Dkt. No. 1; 5:15-cv-00366-PSG, Dkt. No. 1; 5:15-cv-00367-PSG, Dkt. No. 1.  Adaptix's Complaints seek relief for infringement of the '212 and '748 patents by Apple, AT&T, HTC, Verizon and, in each case, John Does Nos. 1-10.

### Adaptix's 2015 Allegations

The 2015 suits allege:

1.      <u>Apple</u>:  Apple indirectly infringes at least Claims 1 and 18 of the '212 patent and at least Claim 21 of the '748 patent by inducing and contributing to the direct infringement of AT&T and

Verizon (together, "the Carriers"), as well as end users of accused Apple Products. The accused Apple products include:  iPhone 6, iPhone 6 Plus, iPad with Retina Display, iPad Mini, iPad Mini 3, iPad Mini with Retina Display, iPad Air, iPad Air 2, iPhone 5, iPhone 5c and iPhone 5s (collectively, "the accused Apple products"). Except for the iPhone 6 and iPhone 6 Plus, released on September 19, 2014, all accused Apple products were identified in Adaptix's 2012 suits against Apple.

2.      HTC: HTC indirectly infringes at least Claims 1 and 18 of the '212 patent and at least Claim 21 of the '748 patent by inducing and contributing to the direct infringement of the Carriers and end users of accused HTC Products. The accused HTC products include:  HTC Desire 610, HTC Desire Eye, HTC First, HTC One (M7), HTC One (M8), HTC One Mini, HTC One VX, and HTC Vivid (collectively, "the accused HTC products"). Except for the HTC Desire 610, HTC Desire Eye, and HTC One M8, all accused HTC products were identified in Adaptix's 2012 suits against HTC.

3.      AT&T:  AT&T directly infringes at least Claim 18 of the '212 patent and at least Claim 21 of the '748 patent by, *inter alia*, making and using its 4G LTE Wireless Network ("the accused AT&T network").  AT&T indirectly infringes at least Claims 1 and 18 of the '212 patent and at least Claim 21 of the '748 patent by inducing and contributing to the direct infringement of end users of the accused AT&T Network and Apple and HTC Products.

4.      Verizon:  Verizon directly infringes at least Claim 18 of the '212 patent and at least Claim 21 of the '748 patent by, *inter alia*, making and using its 4G LTE Wireless Network ("the accused Verizon network").  Verizon indirectly infringes at least Claims 1 and 18 of the '212 patent and at least Claim 21 of the '748 patent by inducing and contributing to the direct infringement of end users of the accused Verizon Network and Apple and HTC Products.

5.      John Does Nos. 1-10:  John Does Nos. 1-10, who are "end users" or "customers" of the accused Carriers' networks and of the accused Manufacturers' products, directly infringe at least Claim 1 of the '212 patent and Claim 21 of the '748 patent. End users of the accused products were not parties to the 2012 suits.

**What issues did this Court previously decide?**

In the 2012 suits, Defendants filed two summary judgment motions, one directed to whether the product itself (the handset) infringed; the other directed to, if there was infringement, which

entity–a Defendant, as opposed to the end user–would be the direct infringer.  *See, e.g.*, 5:13-cv-1776, Dkt. Nos. 311 & 315.[1]

       1.      <u>Whether the Products Themselves Infringe</u>. This Court decided that a reasonable jury could find that the Apple and HTC products infringed, because of record evidence those products met all the limitations of the asserted claims.  *See, e.g.,* 5:13-cv-01776, Dkt. No. 403.  This Court thus rejected Defendants' motion for summary judgment of non-infringement, which Defendants had based on an argument that those handsets did not "select" subcarriers.  *Id*. at 3.  In denying the motion, this Court rejected Defendants' "select" argument as contradicted by the patents' written description. 5:13-cv-01776, Dkt. No. 403 at 5 ("[Defendants'] argument cannot be squared with one of the embodiments of the patent that specifically envisions feedback on all carriers").

       This Opposition repeatedly refers to that decision, and in particular to this Court's statement that, based on the evidence of record, "a reasonable jury could find that" the accused Apple and HTC handsets possess the infringing functionality.  This decision cripples much of Defendants' argument for preclusion.  Defendants do not reference this unfavorable decision in their Motions.

       2.      <u>Whether the Infringer Would Be the Carriers, as Opposed to the End Users</u>:  On their other motion for summary judgment, the only one upon which Defendants now rely (*e.g.*, 5:13-cv-01776, Dkt. No. 311), this Court ruled that because the Apple and HTC handsets were in the possession of end users, and not in the possession of the Carriers, those end users, not the Carriers, "controlled" the performance of the steps of the claimed method.  *See, e.g.*, 5:13-cv-01776, Dkt. No. 405.  As the end users–rather than the Carriers–could thus be the only direct infringers (and because this Court found Adaptix had presented no evidence of use of the devices by the Defendants' employees), this Court granted summary judgment of no direct infringement by the Carriers.  *Id.*

       3.      *<u>SiRF</u>* <u>Theory</u>:  In its Order granting summary judgment on direct infringement by the Carriers, this Court also ruled against Adaptix on its "*SiRF* theory," namely, the theory that providing

---

[1] For ease of reference and the convenience of the Court, all references to the dockets of the 2012 suits are for Case No. 5:13-cv-01776.

3

to an end user a handset programmed to automatically perform the claimed steps made the provider responsible for the performance of those steps. *Id*. at 8.

4.      Indefiniteness:  Finally, this Court granted summary judgment of invalidity of indefiniteness as to certain asserted claims of the '748 and '212 patents ("the Asserted Patents"). *See, e.g.*, 5:13-cv-01776, Dkt. No. 413.

5.      Direct Infringement of the Apparatus Claims and Contributory Infringement: Direct infringement of the apparatus claims and contributory infringement were neither litigated nor decided in the 2012 suits.  This Court had denied, as untimely, Adaptix's motion for leave to add to its infringement contentions infringement of the apparatus claims by reporting mode 3 and contributory infringement. *See, e.g.*, 5:13-cv-01776, Dkt. No. 252.  Adaptix thus filed the 2015 actions to pursue those claims, to the extent not precluded.  *See* Case Nos. 5:15-cv-00364, Dkt. No. 1; -00365, Dkt. No. 1; -00366, Dkt. No. 1; and -00367, Dkt No. 1.

**III. LEGAL STANDARDS**

    **A.  Legal Standard Under Rule 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion challenges the legal theory of the complaint, not the sufficiency of the evidence that might be adduced.  *See Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (vacating dismissal under Rule 12(b)(6) where district court erroneously held constructive, rather than actual, notice started the date for laches); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ("A Rule 12(b)(6) motion tests the legal sufficiency of a claim").  A Rule 12(b)(6) motion should only be granted when, taking all the factual allegations of the complaint as true, and giving the plaintiff all favorable inferences from those facts, the plaintiff clearly would not be able to prove a facts that would support granting the requested relief. *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

The Federal Circuit generally reviews a rule 12(b)(6) dismissal by applying the standards of the regional circuit in which the claim was brought.  *In re Bill of Lading Trans. and Processing*

1   *System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012); *CoreBrace LLC v. Star Seismic LLC*,

2   566 F.3d 1069, 1072 (Fed. Cir. 2009) ("[W]hether a Rule 12(b)(6) motion was properly granted is a

3   purely procedural question not pertaining to patent law, to which this court applies the rule of the

4   regional circuit").

5           **B.   Claim Preclusion and Issue Preclusion vs. Res Judicata and Collateral Estoppel**

6           The terms *res judicata* and *collateral estoppel* encompass two distinct but related concepts:

7   "claim preclusion" and "issue preclusion."  *See Migra v. Warren City School Dist. Bd. of Educ.,* 465

8   U.S. 75, 77 n. 1 (1984).  Issue preclusion refers to the effect of a judgment in foreclosing relitigation

9   of a matter that has been litigated and decided; it is also known as "direct" or "collateral" estoppel.

10  *Id.*; *see also Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1369 (Fed. Cir. 2006).

11  Claim preclusion refers to the prohibition against "splitting" a cause of action into separate grounds of

12  recovery and raising the separate grounds in successive or multiple lawsuits.  *See Mars Inc. v. Nippon*

13  *Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995) ("a party must raise in a single lawsuit all the

14  grounds of recovery arising from a single transaction or series of transactions that can be brought

15  together) (*citing* Restatement (Second) of Judgments § 24(2) (1982)) (all actions arising from the same

16  transaction or series of transactions are regarded as constituting a single cause of action).

17          Although courts generally mean issue preclusion when referring to "collateral estoppel" and

18  claim preclusion when referring to "res judicata," confused usage occurs frequently.  To avoid that

19  confusion here, this Opposition consistently uses the more precise terms, "issue preclusion" and

20  "claim preclusion."

21      **IV. ARGUMENT**

22          The law of issue and claim preclusion in patent cases is comprehensively and authoritatively

23  summarized in the recent decisions in *Brain Life v. Elekta*, 746 F.3d 1045 (Fed. Cir. 2014) ("*Brain*

24  *Life*") and *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ("*Aspex*").

25  This Opposition relies heavily on that authority.

            **A.   CLAIM PRECLUSION**

26          This doctrine does not preclude Adaptix's claims as to acts of infringement committed during

27  the pendency of, or after final judgment in, the 2012 suits.  The Federal Circuit decisions in both *Brain*

28

1   *Life* and *Aspex*, as well as *Gillig v. Nike*, 602 F.3d 1354 (Fed. Cir. 2010), have explicitly so held.

2       In patent cases, the Federal Circuit applies regional circuit law in determining general issues of

3   claim preclusion. *Superior Industries, LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287, 1291

4   (Fed. Cir. 2012). Under the Ninth Circuit's test for claim preclusion, a subsequent action is barred

5   only where the prior action presented the same claim or cause of action. *See Roche Palo Alto v.*

6   *Apotex, Inc.*, 526 F. Supp. 2d 985, 997 (N.D. Cal. 2007); *Owens v. Kaiser Found. Health Plan, Inc.*,

7   244 F.3d 708, 713 (9th Cir. 2001). Because claim preclusion is an affirmative defense, the burden is

8   on Defendants, as proponents of claim preclusion, to produce substantial evidence of this element.

9   *See* Fed.R.Civ.P. 8(c); *MGA Entm't, Inc. v. Mattel, Inc.*, 2011 WL 5007955, at *4 (C.D. Cal. 2011). A

10  motion to dismiss may properly invoke claim preclusion only where the motion is predicated on

11  undisputed facts. *Moralez v. Whole Foods Market, Inc.*, 897 F. Supp. 2d 987, 993 (N.D. Cal. 2012).

12

13       **1. Adaptix's Rights After Final Judgment in the 2012 Suits**

       Claim preclusion does not affect Adaptix's right to recover for acts of infringement that

14  occurred after the final judgment in the 2012 suits. A party who sues a tortfeasor is not barred from

15  seeking relief for discrete tortious action by the same tortfeasor that occurs subsequent to the original

16  action. *See Aspex*, 672 F.3d at 1342; *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322, 328 (1955). This

17  rule applies, regardless of similarities to, or even the identity of, the accused products in the 2012 and

18  2015 suits.

19       This rule is not unique to patent suits. In this circuit, "[t]he rule that a judgment is conclusive

20  as to every matter that might have been litigated 'does not apply to new rights acquired pending the

21  action which might have been, but which were not, required to be litigated." *Los Angeles Branch*

22  *NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 739 (9th Cir. 1985) (en banc).

23       Defendants argue claim preclusion would not be cut off by final judgment because the accused

24  Apple and HTC products in the 2015 suits are either "identical" or "essentially the same" as the

25  accused Apple and HTC products in 2012 suits. But the Federal Circuit in *Aspex*, 672 F.2d at 1342,

26  flatly held those similarities irrelevant to claim preclusion for any products made or sold after the time

27  of the previous lawsuits. *Brain Life* reaffirmed this rule: "traditional notions of claim preclusion do

28

not apply when a patentee accuses new acts of infringement, i.e., post final judgment, in a second suit, <u>even where the products are the same in both cases</u>."  746 F.3d at 1054 (emphasis added).  "Such claims are barred under general preclusion principles only to the extent they can be barred by issue preclusion, with its attendant limitations" or by the *Kessler* doctrine, which "fills the gap between [the claim and issue] preclusion doctrines."  *Id.*

Defendants, confronted by this recent, and hostile, Federal Circuit precedent clearly and explicitly ruling against them on this critical point, respond only by attacking the Federal Circuit panels that rendered these decisions.  Defendants, citing *Newell Cos. v. Kenney Mfg. Co*., 864 F.2d 757, 765 (Fed.Cir. 1988), argue that the Federal Circuit has adopted a rule that a panel cannot "overrule" a position taken by an earlier panel; the court can only do that en banc.[2]  They argue that the holding in *Aspex* (BRYSON, Rader, and Reyna) "contradicts" or "conflicts with" earlier Federal Circuit decisions in *Nystrom v.Trex Co.,* 580 F.3d 1281, 1285-86 (Fed. Cir. 2009), *Foster v. Hallco Mfg. Co*., 947 F.2d 469 (Fed.Cir. 1991), and *Hallco Mfg. Co. v. Foster*, 256  F.3d 1290 (Fed. Cir. 2001). Apple Mot. at 17; AT&T Mot. at 9; HTC Mot. at 17; Verizon Mot. at 12.  They cavalierly dismiss *Brain Life* (O'MALLEY, Bryson, and Wallach) because it "relied on" *Aspex*.  They argue this Court should simply disregard *Aspex* and *Brain Life*.

Defendants are thus modestly asking this Court to write an opinion openly criticizing the thoughtful opinions of panels in several recent prominent cases from the Federal Circuit as having "gotten it wrong," and, in that opinion, refusing to follow the clear instructions from those panels.  Adaptix would suggest the more prudent course of applying the law, as the Federal Circuit has explicitly proclaimed it in these recent cases, and leaving it to that court, on appeal, to evaluate Defendants' attack on how the recent Federal Circuit panels read prior cases.

Although Defendants state that *Aspex* and *Brain Life* (which explicitly reject their position) conflict with earlier decisions,  they do not explain how that is so, or otherwise attempt to persuade.

_____

[2] That rule, however, applies only to holdings, that is, statements necessary to reach the judgment, not to *dicta*.

1   They are apparently holding any explanation for their Reply, so that Adaptix will not have the

2   opportunity to debunk it.

3          Should Defendants pursue this argument on appeal, the Federal Circuit should readily reject it.

4          The Federal Circuit will have little difficulty distinguishing the *Foster* cases, as involving a

5   different issue.  There, the issue was whether earlier judgments, entered after settlements, precluded an

6   affirmative defense of patent invalidity in a later suit.  In the 1991 case, a consent judgment stipulated

7   to infringement, but was ambiguous as to whether validity could be challenged in the future. In the

8   2001 case, the court granted summary judgment of infringement, leaving only invalidity as the issue

9   resolved by the settlement. The decisions thus discussed the "claim" in that context. Neither decision

10  discussed the issue presented in the present cases.

11         As for *Nystrom*, in *Aspex*, defendants had cited that case, as Defendants do here, because

12  *Nystrom* referred to its decision as falling "under the general rubric of res judicata or claim

13  preclusion." 672 F.3d at 1343. *Aspex* rejected the argument, distinguishing *Nystrom* as a case in which

14  the decision actually relied upon issue preclusion, because Nystrom had sought to re-litigate "certain

15  issues" the court had resolved in an earlier proceeding.  *Aspex*, 672 F.3d at 1343-44.

16         As Aspex explicitly rejected the *precise* argument Defendants are making here by

17  distinguishing the holding in *Nystrom* (as involving issue preclusion, not claim preclusion), it did not

18  "conflict with" *Nystrom*, as Defendants argue.  *Brain Life's* reliance on *Aspex*, as precedent that acts

19  of infringement occurring after final judgment could not be barred under the doctrine of claim

20  preclusion, thus also does not conflict with *Nystrom*.  The Federal Circuit will thus reject Defendants'

21  argument that *Aspex* "conflicts with" *Nystrom*, as one that *Aspex* has itself considered and rejected.

22         Additionally, *Aspex* and *Brain Life* are not the only decisions that have explicitly rejected

23  Defendants' claim preclusion arguments.  The Federal Circuit held, in *Gillig v. Nike, Inc.,* that "the res

24  judicata doctrine does not apply to new rights acquired during the action which might have been, but

25  which were not litigated."  602 F.3d at 1363.  This decision, along with the Supreme Court decision in

26

27

28

1  *Lawlor*, and myriad regional circuit decisions[3], fully support *Aspex* and *Brain Life*.

2
3  ## 2. Claim Preclusion Cannot Bar Adaptix's Claims Accruing During Pendency of the 2012 Suits

4   Defendants further overlook Adaptix's claims against Defendants that accrued during

5  pendency of the 2012 actions, focusing only on claims after final judgment.  As the Federal Circuit

6  held in *Gillig*, however, "the res judicata doctrine does not apply to new rights acquired *during* the

7  action which might have been, but which were not litigated." 602 F.3d 1354, 1363 (Fed. Cir. 2010)

8  (emphasis added).  *Gillig* was reaffirmed in *Aspex*, stating that "[w]hile a party may seek to pursue

9  claims that accrue during the pendency of a lawsuit adjudicated in that lawsuit, the party is not

10  required to do so, and res judicata will not be applied to such accruing claims if the party elects not to

11  have them included in the action."  *Aspex* at 1343 (*quoting Gillig*, 602 F.3d at 1363).

12   The frequent statement in opinions that claim preclusion bars all claims that were made or

13  *could have been* made in the first suit applies only to claims that exist as of the date of filing of the

14  later complaint.  As *Aspex* holds, claims for post-filing infringement are not precluded, even though

15  the plaintiff could have added them.  Limiting principles of claim preclusion would allow the plaintiff

16  to choose to file a second complaint.

17   Defendants argue: "[p]ursuant to *Brain Life*, the date of the final judgment in the prior action

18  firmly controls the contours of res judicata," Apple Mot. at 16, relying upon the that case's having

19  used the date of the final judgment as the date upon which claim preclusion would end. But *Brain Life*,

20  was not departing from the established rule, as articulated in *Aspex*. Rather, according to the appellate

21  briefs in *Brain Life*, "damages are sought only for the period after the earlier judgment was entered."

22  (Opening Br. of Appellant at 48). Thus, no one had argued for an earlier date; the parties argued only

23  whether claim preclusion applied for the period after their earlier judgment was entered.

24
25  _____

26
27  [3] *See, e.g.*, *Blair v. City of Greenville*, 649 F.2d 365 (5th Cir. 1981); *Kilgoar v. Colbert County Bd. Of Educ.*, 578 F.2d

28  1033 (5th Cir. 1978); *Manning v. City of Auburn*, 935 F.2d 1355 (11th Cir. 1996); *In Re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001).

1   Defendants also cite *Guild Wineries & Distilleries v. Whitehall Co.*, 853 F.2d 755, 761 (9th Cir.

2   1988) for its statement that "The date of judgment … controls the application of res judicata

3   principles," without apparently having read the case. *Guild Wineries* did not involve this issue. In

4   that case, there was a co-pending proceeding in which a final judgment had been entered. *Guild*

5   *Wineries*, 853 F.2d at 758. When the winning party in that other proceeding invoked claim preclusion,

6   based on that judgment, the losing party argued that claim preclusion should not apply because the

7   other proceeding had been later filed. *Id.* at 761. In finding claim preclusion, the Ninth Circuit, in the

8   above statement, was simply holding that the date of first final judgment, not the date of first filing of

9   the proceeding, determines which proceeding precludes.

10   Defendants have argued that there is no cutoff date for claim preclusion, but if there is, it

11   would be the date of final judgment. They have not, on the Motion, raised the separate issue of

12   whether the cutoff date, if not the date of final judgment, should be the date of filing of the 2012 cases,

13   or some date in between. It is too late to raise that issue in their Reply. In any event, that issue would

14   involve considerable factual development. A motion to dismiss under Rule 12(b)(6) should only be

15   granted after taking all the factual allegations of the complaint as true, and giving the plaintiff all

16   favorable inferences from those facts. *Ashcroft*, 566 U.S. at 678-79. Defendants have produced no

17   record evidence from the 2012 suits showing that claims that accrued during pendency of the 2012

18   suits were adjudicated by final judgment. It was Defendants' burden under 12(b)(6) to bring forth

19   such evidence. *MGA Entm't*, 2011 WL 5007955 at *4. As Defendants have produced none, the Court

20   must infer, at least in deciding the Motion, that claims that accrued during pendency of the 2012 suits

21   were not adjudicated by final judgment and cannot be precluded here.

22   

23   **B.   THE *KESSLER* DOCTRINE**

24   Defendants next argue that Adaptix's claims against Defendants and their customers should be

   dismissed pursuant to the *Kessler D*octrine (*citing Kessler v. Eldred*, 206 U.S. 285 (1907).

25   The facts in *Kessler* were straightforward. The patent owner (Eldred) sued Kessler for

26   manufacturing and selling a product Eldred alleged infringed all the claims of his patent (all of which

27   were product claims). In that first action, the court found the product did not infringe. Elder then sued

28

a customer of Kessler, as a user and seller of the same Kessler products that had been "held … to be no infringement" in the first suit. 206 U.S. at 286. Kessler then filed suit against Eldred to enjoin prosecution of any such customer suits.

The Court found that, as the original decree established Kessler's right to manufacture, use, and sell the lighters that had been found noninfringing, harassing customers in this way would violate Kessler's right. On that basis, the Court enjoined Eldred from bringing suits of this type.

On those facts, the decision seems well reasoned. Since 1907, the general law of issue preclusion has developed to reach the same result, by eliminating the requirement of mutuality of estoppel as to issues actually litigated.

*Kessler* did not, however, present the situation where the product is (or could be) *found to infringe* a valid patent, but where the defendant in the first case avoids liability for some other reason, such as his not being the *actual* seller, importer, or user of the infringing product. In that situation, there would be no reason (and certainly none suggested by any language in *Kessler*) to prevent the patent owner from suing the person that *actually* sold, imported, or used the infringing product. Rather, to deny that right would seem perverse.

Thus, in *Rubber Tire Wheel Co. v. Goodyear Co.*, 232 U.S. 413 (1914), the Supreme Court allowed the patent owner to pursue an infringement action against a customer of the company (Goodyear) that had been the defendant in the first suit, where the claim in the customer suit was that the customer was itself manufacturing an infringing product, albeit by using materials purchased from Goodyear to do so. The Court distinguished *Kessler* because "when other persons become manufacturers on their own behalf, … [Goodyear] cannot insist upon their being protected from suit for infringement by reason merely of its right to make and sell." 232 U.S. at 419.

Consistent with the facts in *Kessler*, *Brain Life* noted the *Kessler* Doctrine gives an accused infringer rights "with respect to specific <u>products</u> that had been held to be non-infringing," 746 F.3d at 1057 (emphasis added).  To the extent a product has been found to be noninfringing, the *Kessler* doctrine bars claims based on products or acts that are "essentially the same" as those previously found not to infringe.  *Id.*

This Court, however, did not find the accused <u>products</u> in the 2012 suits noninfringing.  To the

1   contrary, this Court explicitly ruled, on Defendants' motion, that a reasonable jury could find that the

2   accused products infringe.  The accused products thus never obtained "the status of non-infringing

3   device[s]."  746 F.3d at 1056.

4         *Brain Life* noted the *Kessler* doctrine fills the gap in the doctrines of claim preclusion and issue

5   preclusion "where circumstances justify that result."  746 F.3d at 1056.  Circumstances justify that

6   result where an accused product has been found not to meet the limitations of the asserted claims, and

7   thus not to infringe.  Indeed, in *Kessler* itself, and the two Federal Circuit decisions applying *Kessler*, [4]

8   the court in the earlier cases had found that the accused products did not meet the limitations of the

9   asserted claims.

10         The decision in the 2012 suits, however, concerned only whether, if there was infringement, as

11   between the Defendants and the end users – which was the direct infringer.  The Court rejected

12   Defendants' argument that the handsets did not meet the limitations of the claims.  Because this Court

13   rejected Defendants' argument that the handsets did not meet the limitations of the asserted claims, the

14   *Kessler* Doctrine does not apply.

15         Defendants argue, mechanically, that the *Kessler* Doctrine would bar any suit "on" the same

16   patent.  The *Kessler D*octrine would make no sense, however, if invoked where the product *has* the

17   claimed features.  It only makes sense where the product does not have those features, as in *Kessler*

18   itself.

19         This limited application of the *Kessler* doctrine is supported by this Court's own application of

20   the *Kessler* doctrine in *Shoom, Inc. v. Elec. Imaging Sys. of Amer., Inc.*, Case No. 07-05612, 2011 WL

21   4595212 (N.D. Cal. Oct. 4, 2011).  In *Shoom*, the plaintiff in a declaratory judgment action moved to

22   enforce a final judgment from this District, asking the Court to enjoin the defendant from filing suit

23   against the plaintiff's customers in the Northern District of Illinois.  *Id*. at *1-*2.  This Court, citing

24   *Kessler*, denied the motion, stating, "on the existing record, it is not clear whether or not [plaintiff's]

25

26   _____

27

28   [4] *Brain Life* and *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987).

customers' use of Shoom's products would practice the steps of the asserted claims of the '837 Patents, even if [plaintiff] does not." *Id.* at *4. This Court has thus recognized limiting *Kessler* to circumstances where a materially identical product has been found not to infringe. *Id.* at *3 ("[T]he *Kessler* doctrine grants a 'limited' trade right and provides a party who has prevailed in a patent litigation a measure of certainty that it may manufacture, use or sell <u>a product that has been deemed not to infringe</u> without fear of continued litigation") (emphasis added).

Defendants cite *SpeedTrack,* declaring *SpeedTrack* as holding that "the *Kessler* doctrine bars all subsequent assertions of the same patent." Apple Mot. at 22; AT&T Mot. at 19; HTC Mot. at 22. *SpeedTrack*, however, presented facts similar to *Kessler*. In *SpeedTrack*, this Court dismissed a second action because, as in *Kessler*, the accused product had been adjudged non-infringing in the former action. *SpeedTrack, Inc. v. Office Depo, Inc.*, 2014 WL 1813292, *9 (N.D. Cal. 2014). This Court noted that "SpeedTrack <u>had an opportunity to rebut defendants' showing</u>…but has been unable to identify any material differences between defendants' use of the software and Wal-Mart's non-infringing use of the same software." *Id.* (emphasis added).[5] In *SpeedTrack*, the product in the first action had been found not to meet the claim limitations, and the patentee failed to show that the accused products in the subsequent suit were any different. Here, the accused products have never been found to not meet the claim limitations.

<u>Should this Court extend the *Kessler* Doctrine?</u>

Recognizing that the facts here differ from those in *Kessler*, the question becomes whether the Court should *extend* the doctrine to cover a situation, such as here, where the product *does* (or could be found to) infringe, but where the patent owner loses the first suit because someone other than the defendant was the direct infringer. Defendants argue that the court should extend the doctrine, so as to bar any suit on the patent, even one against the direct infringer. Defendants, however, fail to articulate

---

[5] Although this Court referred to the "acts" or "implementation" found non-infringing in the earlier *Wal-Mart* decision, the record in *SpeedTrack* and *Wal-Mart* make clear that it was the accused <u>product</u> that had been found not to meet the claim limitations. *Compare SpeedTrack, Inc. v. Wal-Mart Stores, et al.*, No. 06-7336-PJH, Dkt. No. 358 at 16 and *SpeedTrack, Inc. v. Office Depot, et al.*, 2014 WL 1813292 (N.D. Cal. May 6, 2014).

any policy reason for such an extension – other than it would allow them to profit from inducing and contributing to that direct infringement.

To begin with, it would seem perverse and against public policy to bar a patent owner from ever suing an infringer in any situation, absent a good reason for establishing such a bar. In *Kessler*, as in *Brain Life* and *MGA*, that there had been a final judgment that the product did not have the patented features sufficed to justify a bar because, to repeat, a court had found that the product did not have the patented features. But extending the doctrine to situations where the results in the first case turns on some other factor would be hard to justify, as it would allow unbridled infringement.

*Brain Life* recognized that *Kessler* was an anachronism and "the continuing force of the *Kessler* Doctrine in the face of the development of defensively applied issue preclusion may be questionable on the precise set of facts presented in the case at bar," where the product *had* been found to not infringe. With obvious reluctance, the court stated "[b]ut, the *Kessler* Doctrine exists, and we are bound by it, even if its viability under current estoppel may be of less value now that was at the time it was handed down." 746 F.3d at 1058.

Although it may cause the Federal Circuit discomfort, until the Supreme Court revisits the issue there will be a *Kessler* doctrine. But neither the case itself, nor the development of preclusion law since 1907, would require expanding that doctrine, and, for the reasons above, it would be perverse to do so.

## C.  <u>ISSUE PRECLUSION</u>

Finally, Verizon alone moves to dismiss "to the extent" Adaptix might argue issues subject to issue preclusion.  But Adaptix had not planned to do so (unless the Federal Circuit reverses) and thus drafted the Complaint so as not to include any allegations issue preclusion would bar.  Verizon does not point to any language in the Complaint that the Court should dismiss.

Adaptix disagrees, however, with Verizon's position as to the extent of issue preclusion as to direct infringement by individuals acting on behalf of Verizon (e.g., a Verizon employee) when using an accused Apple or HTC device to perform any claimed method.  Verizon Mot. at 17.

Issue preclusion bars subsequent litigation on an issue of law or fact that was *actually litigated*

*and determined* by a final judgment. *Brain Life,* 746 F.3d at 1054-55.  The issues actually litigated that this Court actually decided are described above (*supra*, "<u>What issues were previously decided by this Court</u>? at ¶¶ 1-3).

As to the issue of whether "any individual acting on behalf of Verizon (e.g., a Verizon employee) has used an accused Apple or HTC device to perform any claimed method," the final judgment does not preclude litigation for infringing acts that arose after the filing of the 2012 suits.

The Court's Order denying Summary Judgment of the "No Selecting" limitation held a reasonable jury could find that an end user of the Apple and HTC devices infringes.  In granting Verizon's Motion for Summary Judgment of No Direct Infringement, however, the Court noted that Adaptix had produced no evidence to support a finding of direct infringement by individuals' acting on behalf of Verizon—e.g., Verizon employees.  But that funding would obviously not cover whether that use would occur in the future.

In the 2015 suits, Adaptix will provide evidence of Verizon employees' performing the claimed methods as end users of the Apple and HTC handsets after the period that the 2012 complaints encompassed.

The Court should thus deny Verizon's Motion for issue preclusion as to this issue.  The Court should otherwise defer ruling on Verizon's motion on issue preclusion until Adaptix actually argues a precluded issue.

## V. CONCLUSION

The Court should deny Defendants' Motions to Dismiss.  Claim preclusion does not bar Adaptix from asserting claims based on acts that accrued during the pendency of the 2012 actions and after final judgment, as the recent Federal Circuit rulings in *Brain Life*, *Aspex*, and *Gillig* hold. The *Kessler* Doctrine does not bar Adaptix's claims because a reasonable jury could find that Defendants' products infringe.   Finally, the Court should deny Verizon's motion to dismiss based on issue preclusion.

Dated: April 9, 2015                                    Respectfully submitted,

                                                         By: */s/ Paul J. Hayes*
                                                         Paul J. Hayes

1
2
3
4
5
6

James J. Foster
Kevin Gannon
Michael J. Ercolini
**HAYES MESSINA GILMAN & HAYES LLC**
200 State Street, 6th Floor
Boston, MA 02109
Telephone: (617) 345-6900
Facsimile: (617) 443-1999
Email: phayes@hayesmessina.com
Email: jfoster@hayesmessina.com
Email: kgannon@hayesmessina.com
Email: mercolini@hayesmessina.com

7
8
9
10
11

Christopher D. Banys
Jennifer L. Gilbert
**BANYS, P.C.**
1032 Elwell Court, Suite 100
Palo Alto, CA 04303
Telephone: (650) 308-8505
Facsimile: (650) 353-2202
Email:  cdb@banyspc.com
Email:  jlg@banyspc.com

12
13

**ATTORNEYS FOR THE PLAINTIFF
ADAPTIX, INC.**

14

<u>CERTIFICATE OF SERVICE</u>

15

I hereby certify that counsel of record for the Defendants are being served with a true and correct copy of this document via electronic mail on this 9th day of April, 2015.

16
17

/s/ *Michael J. Ercolini*
Michael J. Ercolini

18
19
20
21
22
23
24
25
26
27
28

06088198